**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **WALTER V. MURRAY,** | : | **CORAM NOBIS** |
| **Movant,** | : | **28 U.S.C. § 1651** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:09-CR-308-RWS-AJB-1** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **CIVIL ACTION NO.** |
| | : | **1:15-CV-325-RWS-AJB** |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant, Walter V. Murray, filed a *pro se* "motion to vacate plea due to immigration consequences." [Doc. 27.]¹ The District Court construed that motion as a petition for writ of error *coram nobis* and referred the matter to the undersigned to conduct an evidentiary hearing. [Doc. 61.] Following the hearing, the parties filed briefs. [Docs. 75, 79, 82.] For the reasons discussed below, the undersigned **RECOMMENDS** that the "motion to vacate plea due to immigration consequences" be **GRANTED**.

I.     **Background**

Movant is a citizen of Trinidad and Tobago and a lawful permanent resident of the United States for more than thirty years. [Doc. 27 at 5-6; Doc. 75 at 1;

---

¹     Citations to the record in this Final Report and Recommendation refer to case number 1:09-cr-308-RWS-AJB-1.

Doc. 79 at 2.]  In an information filed on June 25, 2009, Movant was charged with income tax evasion in the amount of $22,054, in violation of 26 U.S.C. § 7201. [Doc. 1.]  Movant pleaded guilty on December 10, 2009.  [Doc. 15.]

On April 2, 2010, Movant was sentenced to twelve months and one day of imprisonment, followed by two years of supervised release.  [Doc. 24.]  The Judgment and Commitment, entered on April 14, 2010, provided that (1) Movant was "allowed to voluntarily surrender upon designation by the Bureau of Prisons," and (2) "[u]pon release from imprisonment, [Movant] shall be turned over to a duly authorized . . . Immigration and Custom[s] Enforcement official for appropriate removal proceedings from the United States."  [*Id.* at 2.]  Movant did not appeal.  [*See* Dkt.]

Movant's retained counsel, David R. MacKusick, withdrew from the case after sentencing.  [*See* Docs. 26, 34-1.]  Movant filed his *pro se* "motion to vacate plea due to immigration consequences" on April 20, 2010.  [Doc. 27.]  Movant then obtained two extensions of his voluntary surrender date, until July 19, 2010.  [Docs. 34-1, 39.]  Movant surrendered on that date, but he obtained release on bond on August 3, 2010, pending adjudication of his "motion to vacate plea due to immigration consequences." [Doc. 44.]   Nicole M. Kaplan of the Federal Defender Program, Inc., was appointed to represent Movant in connection with that motion.  [Docs. 45, 46.]  On April 17 and

2

August 14, 2013, Movant and the Government indicated that they were attempting to reach an agreement in this case.  [Docs. 50, 51.]  However, the parties' efforts were ultimately unsuccessful.

On January 29, 2015, the District Court construed the "motion to vacate plea due to immigration consequences" as a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence.  [Doc. 57.]  On March 13, 2015, the District Court granted the Government's consent motion to construe this matter as a petition for writ of error *coram nobis*.  [Doc. 61.]  On December 10, 2015, the undersigned conducted an evidentiary hearing.  [Doc. 70.]

## II.   Writ of Error *Coram Nobis*

The United States Court of Appeals for the Eleventh Circuit has set forth the following standard that applies to a petition for writ of error *coram nobis*:

> Federal courts have authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a).  The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice. . . .  A court's jurisdiction over coram nobis petitions is limited to the review of errors of the most fundamental character. . . .  Such errors do not include prejudicial misconduct in the course of the trial, the misbehavior or partiality of jurors, and newly discovered evidence. . . .  In addition, courts may consider coram nobis petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier.

3

*United States v. Mills*, 221 F.3d 1201, 1203-04 (11th Cir. 2000) (citations, footnotes, and internal quotation marks omitted).  "A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255." *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (per curiam).

In the present case, Movant was not incarcerated when he filed his "motion to vacate plea due to immigration consequences."  However, Movant had recently been sentenced and was scheduled to surrender voluntarily.  Therefore, Movant was "in custody under sentence of a [federal] court . . . ." 28 U.S.C. § 2255(a); *see also Daker v. Baker*, 263 Fed. Appx. 809, 812 (11th Cir. Jan. 25, 2008) (per curiam) (explaining that movant "need not be physically confined . . . as long as [government] action subjects [him] to restraints on liberty that are not generally shared by the public").[2]

The undersigned concludes that Movant may not obtain a writ of error *coram nobis*, but his "motion to vacate plea due to immigration consequences" may be properly considered as a § 2255 motion.

---

[2]      Although *Daker* involved a habeas petition, "the principles developed in habeas cases also apply to § 2255 motions."  *Gay v. United States*, 816 F.2d 614, 616 n.1 (11th Cir. 1987) (per curiam) (citation omitted).

4

III.   **28 U.S.C. § 2255**

A.   **Standard of Review**

A motion to vacate, set aside, or correct sentence may be made "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255(a).

"[C]ollateral review is not a substitute for a direct appeal . . . ."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam).  Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Id.* (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted).  A § 2255 movant "has the burden of sustaining his contentions by a preponderance of the evidence."  *Tarver v. United States*, 344 Fed. Appx. 581, 582 (11th Cir. Sept. 18, 2009) (per curiam) (quoting *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[3]).

--------

[3]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

AO 72A
(Rev.8/8
2)

**B.**      **Ineffective Assistance of Counsel**

Movant claims that MacKusick provided ineffective assistance. [Doc. 27 at 1-3.] "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).   In order to demonstrate ineffective assistance of counsel, a convicted defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As to the first prong of *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).  As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court may consider either prong first and need not address the other "if the defendant makes an insufficient showing on one." *Id.* at 697.

AO 72A
(Rev.8/8
2)

"[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [pleading guilty] and going to trial." *Searcy v. Fla. Dep't of Corr.*, 485 Fed. Appx. 992, 997 (11th Cir. Aug. 9, 2012) (per curiam) (quoting *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984)) (internal quotation marks omitted).  A defendant who has pleaded guilty must satisfy the second prong of *Strickland* by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. June 10, 2014) (per curiam).  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

### C.    <u>Counsel's Performance</u>

Movant contends that MacKusick should have advised him that he definitely would be deported after pleading guilty to income tax evasion in the amount of $22,054.  [Doc. 27 at 1-3; Doc. 75 at 7-10.]  At the evidentiary hearing, Movant testified that he understood MacKusick's advice to be that Movant "could possibly be

7

deported or . . . not. . . .  [I]t wasn't a clear-cut decision one way or the other . . . ." [Doc. 72 at 10.]  Consequently, Movant thought that he "would have a chance to go to . . . an immigration court to make a case [against deportation]."  [*Id.*]  It was only after sentencing, when Movant received a notice to report to prison, that he became "pretty certain that [he] probably was not going to have [a] chance" to contest deportation. [*Id.* at 11-12.]

Numerous emails between Movant and MacKusick were admitted into evidence at the hearing.  [Mov't Ex. 5-11; Gov't Ex. 1-4, 7-8.]  In an email to Movant on September 10, 2007, with the subject line "deportable," and in response to Movant's emailed question "Is my matter an aggravated felony," MacKusick wrote:

> Off the top of my head, I suspect that you likely will be charged with an offense that will be an aggravated felony because it will involve fraud or deceit and the loss amount would be greater than $10,000.  I do not know if the loss amount is calculated in the aggregate such as for sentencing guidelines, or per offense. . . .  For sentencing purposes, it would not make any difference, *but it might make a difference for immigration purposes unless loss is calculated for all "relevant conduct" just like under the sentencing guidelines.*

[Gov't Ex. 2 at 2 (emphasis added).]  The next day, after Movant asked him if the judge could downgrade an aggravated felony to a felony, MacKusick (1) responded that a federal district judge could if the loss amount was less than $10,000, but the judge "probably cannot change an offense that meets the definition of an aggravated felony

AO 72A
(Rev.8/8
2)

to a felony just by saying so," (2) concluded that "I have no idea what an immigration judge can or cannot do," and (3) invited Movant to consult an immigration lawyer.  [Gov't Ex. 3.]

On October 27, 2007, MacKusick emailed Movant and explained, in connection with discussing how to arrive at relevant conduct for Sentencing Guidelines purposes, that in the Eleventh Circuit case that he attached,[4] "[t]here is language in that opinion to support the proposition that only the loss amount connected to the offense of conviction can be considered to determine whether an offense is an aggravated felony, not relevant conduct."  [Gov't Ex. 7 at 1.]  The gist of MacKusick's emails was that Movant's deportation was not a certainty.

Subsequently, in an email dated December 24, 2008, MacKusick advised Movant that he "would be subject to deportation after serving [his] sentence."  [Mov't Ex. 10.] In an email dated June 15, 2009, MacKusick wrote the following:

> [B]ecause of your immigration status, once you complete the

---

[4]      The attachments referenced in the email were not introduced at the evidentiary hearing.  The Court presumes that one of the cases referenced in the email was *Obasohan v. U.S. Atty. Gen.*, 479 F.3d 785 (11th Cir. 2007), *abrogated by Nijhawan v. Holder*, 557 U.S. 29 (2009).   *Nijhawan* in effect held contrary to the *Obasohan* court's interpretation of how to determine what is an aggravated felony, and thus whatever reliance MacKusick was entitled to place on that holding ceased to exist once *Nijhawan* was decided.  The Court also notes that the opinion in *Nijhawan* was issued before Movant pleaded guilty.

9

custodial portion [of] your sentence, you will then be turned over to immigration for deportation proceedings.  They usually do this during the last six months or so of your sentence so that as soon as the custodial portion of your sentence is complete, you can be deported.  It is a benefit to you that they do it that way.  Otherwise, you would remain in [immigration custody] during the deportation process after you had already completed your sentence.  You will not be on supervised release or go to a halfway house. . . .

As far as the restitution goes, the government will try to get it out of any assets you have that they can easily seize and liquidate, and any income you have while in custody.  After that, you will be deported and as a practical matter they will never collect the balance.  Same goes for any fine.

[Mov't Ex. 11.]

Movant was charged in the information ten days later, on June 25, 2009, and he pleaded guilty approximately six months after the June 15 email, on December 10, 2009. [Doc. 15.]  His plea agreement did not discuss the immigration consequences of his guilty plea, [*see* Mov't Ex. 2], nor were those consequences discussed during his change of plea proceeding, [Mov't Ex. 3, [Doc. 35].]

As to any advice that he gave to Movant about the effect of a conviction on Movant's status in the country, MacKusick testified at the hearing before the undersigned, as follows:

I would never tell a client that anything was absolutely certain, particularly in a federal criminal case.  In fact, I told [a client] the exact opposite, [that] nothing is ever certain in a federal criminal case.  I can't

10

promise [clients that] anything would happen.

I would couch [my advice] in terms of probabilities, because I think part of my job is to . . . try to tell [clients] what they could reasonably expect to happen . . . .

I explain to them what their options are in a case. I try to explain to them what is possible, what could happen, what is impossible, what cannot happen, and what they reasonably can expect to happen . . . .

I did tell [Movant that] the [charge] he ended up pleading guilty to is an aggravated felony. It would be couched in terms of, "he would be likely to be deported," or "it was probable [that] he would be deported," or "you can reasonably expect to be deported, but I can't say anything certain."

[Doc. 72 at 65.]  Moreover, at Movant's April 2, 2010 sentencing, MacKusick argued

to the District Judge as follows:

In addition to that, he faces some other punishment. I know you have noticed that he is not a U.S. citizen despite the fact that he's been here for 30 years.

It's possible he'll be deported. I'm not an immigration expert. I don't know exactly what will happen. If he is deported, you know his family is here. His home is here. His businesses are here. He's been here for 30 years. Everything he has, all of his work in the community, he'll lose all of that if he is deported.

[Mov't Ex. 1 at 12, [Doc. 36 at 12].]

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court

"held that the Sixth Amendment requires an attorney for a criminal defendant to

11

provide advice about the risk of deportation arising from a guilty plea." *Chaidez v. United States*, 568 U.S. 342, 344 (2013) (citing *Padilla*). "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369 (footnote omitted). "But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.*  The latter situation arises when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence . . . ." *Id.* at 368.  In that situation, deportation is "presumptively mandatory." *Id.* at 369.  Counsel's advice in *Padilla* was plainly incorrect, and the Supreme Court determined that counsel was deficient. *Id.* at 359, 368-69.[5]

In the present case, Movant's charge of income tax evasion in the amount of $22,054 is an aggravated felony because it "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(ii).  "Any alien who is convicted of an aggravated felony at any time after admission is deportable." *Id.* § 1227(a)(2)(A)(iii).  Because the relevant immigration statutes clearly define a

---

[5]      *See also Hernandez v. United States*, 778 F.3d 1230, 1233 (11th Cir. 2015) (determining that defendant could prove deficient performance based on advice of substantial likelihood "that [defendant] would not be deported," when deportation was presumptively mandatory).

presumptively mandatory deportation consequence for Movant, MacKusick had a duty to advise him accordingly, pursuant to *Padilla*.

As explained above, MacKusick emailed Movant on June 15, 2009, that (1) he "will . . . be turned over to immigration for deportation proceedings" during the last six months of his sentence, (2) "as soon as the custodial portion of [his] sentence is complete, [he] can be deported," (3) without the usual immigration procedure, he "would remain in [immigration custody] during the deportation process," (4) he "will not be on supervised release or go to a halfway house," and (5) he "will be deported" after the Government seizes his assets. [Mov't Ex. 11.] That email could possibly be interpreted as advice that deportation was a certainty. However, it was only one email among the many that MacKusick and Movant exchanged, and the only definitive statement about deportation was contained in a discussion about restitution and the email preceded Movant's charge by ten days and guilty plea by approximately six months. This email also discussed going through deportation proceedings and a statement that Movant "can be deported" along with the statement that he "will be deported."

Although MacKusick testified at the hearing before the undersigned that he told Movant that pleading guilty to his aggravated felony charge was only likely to lead to

13

deportation and was not a certainty, the testimony was given many years after the fact and was couched not in terms of what he actually told Movant but what he generally told clients.  MacKusick's testimony about the advice he gave Movant was stated in the passive voice, which leads the undersigned to partially discount it.[6]  On the other hand, MacKusick told the District Court at sentencing that "[i]t's possible he'll be deported. . . .  I don't know exactly what will happen."  [Mov't Ex. 1 at 12 [Doc. 36 at 12].]  That statement was a far better and much more contemporaneous reflection of MacKusick's knowledge as to the consequences of Movant's guilty plea and provides a much better indication of the advice that he gave to Movant.  That is, the only time that MacKusick stated with any definitiveness that Movant would be deported was when he "buried the lede" in an explanation of how the authorities would collect restitution, while at the same time telling Movant that he "can be deported."  [Mov't Ex. 11].  Accordingly, the undersigned concludes that MacKusick provided advice that was generally correct but incomplete, unlike counsel in *Padilla*, who provided plainly incorrect advice.

MacKusick's advice would have been sufficient only if the relevant immigration

---

[6]    Neither party cross-examined MacKusick on the actual language he employed in the emails to Movant.

14

statutes were not "succinct and straightforward."   *Padilla*, 559 U.S. at 369.[7]

MacKusick was required to provide the additional advice that a conviction for an

aggravated felony leads to presumptively mandatory deportation.  Because MacKusick

did not provide that additional advice, his performance was deficient.[8]

---

[7]      At least four other circuits have based a decision on the distinction in *Padilla* between the presence and absence of "succinct and straightforward" immigration law.  *See United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017) (determining that counsel was deficient based on advice that "the plea agreement presented only a risk, but not a certainty, of deportation," even though counsel "only needed to read the correct version of the statute to determine that the crime was an aggravated felony"); *United States v. Al Halabi*, 633 Fed. Appx. 801, 803 (2d Cir. Dec. 14, 2015) (per curiam) (determining that counsel was deficient based on advice that defendant " 'may' be deported, when in fact deportation is mandatory for the offense to which [he] pleaded guilty"); *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (holding that counsel was deficient based on failure "to advise [defendant] that her conviction rendered her removal virtually certain, or words to that effect"); *Maiyo v. United States*, 576 Fed. Appx. 567, 569-71 (6th Cir. Aug. 13, 2014) (determining that counsel was not deficient because (1) "[s]he informed [defendant] that he could be deported as a result of a guilty plea," and (2) prosecutor represented that "deportation is only a possibility rather than a certainty," based on defendant's marriage to U.S. citizen and possible "qualif[ication] for asylum or withholding of removal").

        In addition, the Third Circuit has noted that informing a defendant regarding "automatic deportation . . . is required under *Padilla* in cases . . . where the immigration consequences of a guilty plea are clear."  *United States v. Fazio*, 795 F.3d 421, 427 (3d Cir. 2015).

[8]      The undersigned recognizes that *Padilla* was not available to MacKusick when he advised Movant.  Movant pleaded guilty on December 10, 2009.  *Padilla* was decided on March 31, 2010.  Movant was sentenced on April 2, 2010, and the Judgment and Commitment was entered on April 14, 2010.  Because Movant did not appeal, his

15

D.      **Prejudice to Movant**

Movant argues that there is a reasonable probability that, but for MacKusick's deficient performance, Movant would not have pleaded guilty and would have insisted on going to trial.  [Doc. 27 at 2; Doc. 75 at 11-13.]  At the evidentiary hearing, both Movant and MacKusick testified that they frequently discussed the impact of Movant's criminal case on his immigration status from the time when Movant hired MacKusick, in September 2007, through sentencing in April 2010.  [Doc. 72 at 6-7, 9-10, 18-23, 30-45, 68.]

Movant testified that he would have gone to trial if he had known that deportation was a certainty following a guilty plea.  [*Id.* at 53.]  MacKusick testified that in "one of the first conversations" he had with Movant, Movant decided that "he was not interested in going to trial [because] he wanted to get the fullest benefit for his cooperation" with the Government.  [*Id.* at 82.]  MacKusick further testified:  "We

conviction became final on April 28, 2010, which was twenty-eight days after *Padilla* was decided.  *See* 28 U.S.C. § 2255(f)(1); Fed. R. App. P. 4(b)(1)(A)(i).

*Padilla* applies to Movant because his conviction became final after *Padilla* was decided.  *See Chaidez*, 568 U.S. at 358 (explaining that "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding"); *Hernandez*, 778 F.3d at 1231, 1232-34 (applying *Padilla* in case in which (1) defendant pleaded guilty before *Padilla* was decided, and (2) defendant's conviction became final after *Padilla* was decided).

16

would have handled [the case] differently if [Movant] had not wanted to do that." [*Id.*] MacKusick was not asked, and he did not state, whether he thought that Movant would have gone to trial if he had known that deportation was a certainty following a guilty plea.

Movant testified that, before he pleaded guilty, he "felt that going to trial with a chance of winning to avoid deportation was better than pleading guilty. [If] you plead guilty, there's no chance of winning . . . ." [*Id.* at 14.] Movant also testified that a conviction at trial would have resulted in a sentence that was approximately six months longer than the sentence he received after pleading guilty. [*Id.*] As to the prospect of receiving a longer sentence, Movant testified as follows:

> [A]t least [the longer sentence] would have covered a significant [period] when [my children] were in high school. I felt like I was going to be more able to participate, even though it was maybe vicariously, being here in prison in the U.S. than being in a foreign country away from them. That was my thinking, and . . . it may have been kind of sentimental thinking at the time, but that's what I thought: . . . I'd be closer to my kids.

[*Id.* at 54.] As previously noted, deportation was not discussed in Movant's plea agreement or during the plea colloquy. [*See* Docs. 15-1, 35; Doc. 75 at 3; Doc. 79 at 7.]

In *Lee v. United States*, 137 S. Ct. 1958 (2017), the Supreme Court explained that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his 's deficiencies. Judges should instead

17

look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967. The focus of the inquiry is "a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." *Id.* at 1966. "The decision whether to plead guilty . . . involves assessing the respective consequences of a conviction after trial and by plea. . . . When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years." *Id.* at 1966-67 (citation omitted). "[T]he possibility of even a highly improbable result may be pertinent to the extent it would have affected [a defendant's] decisionmaking." *Id.* at 1967. "Deportation is always a particularly severe penalty, . . . and we have recognized that preserving the client's right to remain in the United States may be more important to the client than any potential [prison] sentence . . . ." *Id.* at 1968 (citations and internal quotation marks omitted).

The Supreme Court determined that there was "substantial and uncontroverted evidence" of prejudice in *Lee* for the following reasons: (1) "avoiding deportation was *the* determinative factor" and of "paramount importance" to Jae Lee, a lawful permanent resident who had pleaded guilty and "had no real defense to the charge";

18

(2) Lee had "strong connections to the United States"; (3) to Lee, "deportation after some time in prison was not meaningfully different from deportation after somewhat less time"; (4) "both Lee and his attorney testified at the evidentiary hearing [in the district court] that Lee would have gone to trial if he had known about the deportation consequences"; and (5) Lee "demonstrated as much at his plea colloquy" by stating that deportation affected his decision to plead guilty, but he did not understand how. *Id.* at 1962, 1967-69. The Supreme Court concluded:

> But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the determinative issue for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. . . . Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so.

*Id.* at 1968-69 (citation and internal quotation marks omitted).

In the present case, there is also "substantial and uncontroverted evidence" of prejudice. *Id.* at 1969. Movant has strong connections to the United States, and the contemporaneous evidence shows that he frequently consulted MacKusick regarding the impact of Movant's criminal case on his immigration status. Movant testified that

19

avoiding deportation was important to him, and he anticipated that receiving an additional six-month sentence following a conviction at trial actually would benefit him by keeping him in the United States closer to his children and delaying his deportation.

The Government correctly points out that Movant is not entirely credible.  For example, Movant asserted in his *pro se* "motion to vacate plea due to immigration consequences" that MacKusick's immigration advice "was limited to suggesting that [Movant] seek advice [from] an immigration attorney because [MacKusick] was not an immigration attorney."  [Doc. 27 at 2.]  Movant acknowledged at the evidentiary hearing that his previous assertion was incorrect because MacKusick advised him that he was charged with an aggravated felony, and a guilty plea would likely lead to deportation.  [Doc. 72 at 49-50.]  Therefore, the undersigned finds that Movant is only partially credible, and his testimony is entitled to less weight than MacKusick's.

However, the Government fails to refute the evidence of prejudice in this case. The Government does not show that deportation was unimportant to Movant.[9]  The email discussions introduced into evidence and in part discussed in this R&R demonstrate that deportation consequences were a significant, and at times, the primary,

---

[9]      *See Dodd v. United States*, No. 16-11598, 2017 WL 4231073, at *2 (11th Cir. Sept. 25, 2017) (per curiam) (determining that prejudice was not established because factors other than deportation led to guilty plea).

20

focus of Movant's guilty plea decisionmaking.  The record does not show that Movant (1) knew, from a source other than MacKusick, that deportation would be presumptively mandatory following a guilty plea, and (2) proceeded nevertheless. Movant could not have gained such knowledge from his plea agreement or during the plea colloquy because there was no discussion of deportation.[10]  Further, at the time of sentencing, just after *Padilla* was decided, MacKusick still only advised the District Court, in Movant's presence, of the possibility of deportation.

The undersigned concludes that a preponderance of the evidence favors Movant's argument that he was prejudiced by MacKusick's deficient performance.

Accordingly, the undersigned **RECOMMENDS** that Movant has demonstrated an entitlement to § 2255 relief, and his "motion to vacate plea due to immigration consequences" should be **GRANTED**.

## IV.    Conclusion

For the reasons stated above,

---

[10]    *See Levy v. United States*, 665 Fed. Appx. 820, 823-24 (11th Cir. Dec. 6, 2016) (per curiam) (determining that prejudice was not established because plea agreement stated that deportation was presumptively mandatory, and movant "wanted to plead guilty *even if* it resulted in his *automatic removal* from the United States"); *Bah v. United States*, Nos. 1:12-cr-98-RWS-RGV-1 & 1:17-cv-3158-RWS-RGV, 2018 WL 330145, at *1-*2 (N.D. Ga. Jan. 9, 2018) (same); *Fazio*, 795 F.3d at 427-29 (same).

AO 72A
(Rev.8/8
2)

**IT IS RECOMMENDED** that:  (1) Movant's "motion to vacate plea due to immigration consequences," [Doc. 27], construed as a 28 U.S.C. § 2255 motion, be **GRANTED**; (2) judgment be entered in favor of Movant in civil action number 1:15-cv-325-RWS-AJB, and that case be **CLOSED**; and (3) the Judgment and Commitment in criminal action number 1:09-cr-308-RWS-AJB-1, [Doc. 24], be **VACATED**, and that case be **REOPENED** for further proceedings.[11]

The Clerk is **DIRECTED** to terminate the referral of civil action number 1:15-cv-325-RWS-AJB to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this __29th__ day of January, 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

---

[11]     The undersigned does not address a certificate of appealability because it "is not required when . . . the United States or its representative appeals."  Fed. R. App. P. 22(b)(3).

22